UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GLEN LEWIS
    Plaintiff,

v.                                               Case No.: 3:04-cv-44-J-20MMH

GORDON R. ENGLAND, et. al.,
    Defendants.
_____/

## ORDER

Before the Court are several dispositive motions. First, The United States moved, in a special and limited appearance, to dismiss all claims against Defendants in their official and federal capacities. (Doc. No. 41, filed July 29, 2005). Plaintiff responded in opposition on August 25, 2005. (Doc. No. 51). Defendant James E. Gray filed his Amended Motion to Dismiss Defendant in his Federal Official Capacity and Individually (Doc. No. 57, September 1, 2005). Defendants William Sessoms and Daniel Sud filed a Joint Motion for Summary Judgment, or for Dismissal of the Complaint. (Doc. No. 54, filed August 31, 2005). Plaintiff Responded to both Motions in a Single Response in Opposition. (Doc. No. 63, filed October 7, 2005). Finally, Plaintiff filed a Motion for Extension of Time to Invoke Court-Annexed Mediation or in the Alternative Motion for Court-Annexed Mediation. (Doc. No. 52, filed August 28, 2005).

I. **Factual Background**

This case concerns a use of force during the arrest of Plaintiff Glen Lewis. On March 2, 2003, at approximately 12:48 a.m., Plaintiff's vehicle was stopped on the roadway entrance of the Mayport Naval Station by uniformed civilian police officers employed by the Department of

the Navy. Plaintiff claims that he was attempting to catch up to the driver of another vehicle who allegedly struck his vehicle with a can or bottle at a stop light. (Lewis Depo. at. 148). Plaintiff was then arrested for driving under the influence of alcohol. During the arrest, it began to rain and the arresting officers decided to transport Plaintiff to the Security Department at Building 1591 to complete the arrest. (Pfeiffer Aff. at ¶ 4). Plaintiff was handcuffed and placed in the backseat of one of the officer's vehicles without incident.

When arriving at Building 1591, Plaintiff was led from the back of the police car to the conference room area of the building to complete the arrest. He was seated in a restraining chair and remained handcuffed, but the restraining belts were not fastened around him. (Lewis Depo. at 172). Plaintiff was mouthing off to the officers and continually called them "penises." (Complaint at ¶ 20; Pfeiffer Aff. at ¶ 8). He also stood several times from his chair to yell at the officers, but he always sat back down in the chair when instructed to do so. (Pfeiffer Aff. at 9). Plaintiff was asked to perform field sobriety exercises, but he refused to do so. (Pfeiffer Aff. at ¶ 8).

Plaintiff contends that Defendant Gray became enraged at Plaintiff's name-calling. When the arresting officer left the conference room to complete the paperwork required for an arrest, Defendant Gray grabbed Plaintiff by his throat in a "choke-hold." Defendant Gray forcibly slammed Plaintiff up against a wall and then threw him back into the restraining chair. (Pfeiffer Aff. at 20). Other officers heard a commotion and ran back into the conference room. The officers saw Defendant Gray hovering over Plaintiff with his hand around Plaintiff's throat. (Complaint at ¶ 26-27). Plaintiff claims that as a result of the impact, his neck was sore and he hit his head on the back of the restraining chair causing a small bump on the back of his head that

he still has today. (Lewis Depo. at 172-73).

Defendant Gray then grabbed a big roll of duct-tape and placed a strip over Plaintiff's mouth. One officer told Defendant Gray to stop. (Complaint at ¶ 29). Trying to maintain a space through which to breathe, Plaintiff attempted to stick his tongue through an opening that was not completely covered by the tape. (Pfeiffer Aff. at ¶ 24). Defendant Gray then placed a second piece of duct-tape over Plaintiff's mouth to completely cover it. (Complaint at ¶ 33). Defendant Gray contends that Plaintiff was attempting to bite him. (Gray Depo. at p. 36-37; 40; 46). Plaintiff alleges that he never tried to bite anyone. (Lewis Depo. at 265-66). Defendant Gray also admitted that Plaintiff was not attempting to spit at him. (Pfeiffer Aff. at 27).

At some point after Defendant Gray affixed the duct-tape over Plaintiff's mouth, Defendants Sessoms and Sud, both functioning in supervisory roles, learned of the altercation. Plaintiff claims that Defendants Sessoms and Sud walked into the room where he was located, laughed at him, and walked away. (Complaint at ¶ 37). Defendants Sessoms and Sud deny laughing at Plaintiff. After learning of the duct-taping incident, Defendant Sud, at the instruction of Defendant Sessoms, used his radio to call Defendant Gray and told him to remove the duct-tape from Plaintiff "because the suspect could throw up or choke or something like that." (Sud Depo. at 52-53). Later, Defendant Sud returned to find that the duct-tape had been removed from Plaintiff's mouth. Plaintiff contends that the duct-tape remained over his mouth up to 40 minutes. (Lewis Depo. at 178). Based on this encounter, Plaintiff has brought a multi-count complaint against several officers in their official capacities and against the officers individually alleging common law torts as well as violations of his constitutional rights.

II. **Official Capacity Claims**

3

Plaintiff has filed suit against all Defendants in their official capacities as officers of the United States Navy. The United States has not assumed representation of any of the Defendants at the present date. In a limited appearance, the Government has moved to dismiss Plaintiff's claims against the Defendants in their official capacities as federal government employees.

A. Standard of Review

In deciding a defendant's motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff. See e.g., Scheuer v. Rhodes, 416 U.S. 232 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991). Where no construction of the factual allegations will support the cause of action, however, the Court may dismiss the complaint as a matter of law. Marshall County Board of Education v. Marshall County Gas District, 992 F.2d 1171, 1174 (11th Cir. 1993).

The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The Federal Rules have adopted this simplified pleading approach because of "the liberal opportunity for discovery and other pretrial procedures . . . to disclose more precisely the basis of both claim and defense . . . ." Conley, 355 U.S. at 47-48. The purpose of notice pleading is to reach a decision on the merits and avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." Id. at 48.

B. Discussion

The Government contends that all of Plaintiff's claims against Defendants in their official capacities are barred and should be dismissed because Defendants, as federal employees, are immune from suit under the Federal Torts Claims Act. 28 U.S.C. §§ 1346(b), 2671 *et. seq.* The Government is wrong.

In its Reply (Doc. No. 65, filed October 19, 2005), the Government is backed into the curious argument that suits against federal employees in their official capacities are somehow distinguishable from suits against the United States itself: "the FTCA is singularly explicit that the proper defendant in an FTCA suit is the United States itself, not a ...federal official." (Doc. No. 65 at 3). To the contrary, long-standing settled law establishes that a suit against a federal employee in his or her official capacity is a suit against the United States. (emphasis added). Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1990). None of the cases cited by the Government are on point.[1] Thus, Plaintiff has stated a proper cause of action and the United States' Motion to Dismiss (Doc. No. 41) is **DENIED**.

Presumably relying on its flawed immunity argument, the Government has declined to certify that the Defendants were acting in the scope of their employment when the incident involving Plaintiff occurred. 28 U.S.C. § 2679(d). The United States shall have **thirty (30) days**

---

[1] In Nadler v. Mann, 951 F.2d 301 (11th Cir. 1992), the Eleventh Circuit ruled that the exclusivity provision of the FTCA precludes suit against a federal employee in his individual capacity, even when no relief is available to the plaintiff under the FTCA. The Aviles v. Lutz Court, 887 F.2d 1046 (10th Cir. 1991) held that the FTCA does not allow suits against specific federal agencies. And Barnard v. Century Enter., Inc., 1996 WL 225780 (9th Cir. 1996) concluded that a Plaintiff's suit under the FTCA was barred because he failed to exhaust administrative remedies. Not one of these cases stands for the proposition encouraged by the Government - that a suit against a federal employee in his or her official capacity is precluded because the plaintiff did not specifically sue the United States in name.

from the date of this Order within which to submit a scope of employment certification pursuant to § 2679(d)(2) if it so chooses. If the Attorney General chooses not to certify that Defendants were acting within the scope of their employment at the time of the incident in question, the District Court has inherent authority to weigh the evidence, make the scope of authority determination, and potentially substitute the United States as the proper defendant. See Haddon v. United States, 68 F.3d 1420 (D.C. 1995) (federal court may determine independently whether employee acted within scope of employment and whether to substitute federal government as proper defendant); B&A Marine Co., Inc. v. Am. Foreign Shipping Co., Inc., 23 F.3d 709 (2d Cir. 1994) (in determining whether United States should be substituted as party defendant under FTCA, court must determine whether tort-feasors were acting in role of employees of the government).

III. **Individual Capacity Claims**

Plaintiff has also sued Defendants Sessoms, Sud, and Gray in their individual capacities. Defendant Gray refers to his dispositive motion as a motion to dismiss. Defendants Sessoms and Sud are seeking dismissal of the Complaint or, in the alternative, summary judgment. As the Parties have submitted evidence outside of the four corners of the Complaint for consideration, including deposition and affidavit testimony, and due to the late stage of this litigation with a trial set to commence on January 9, 2006, the Court construes all pending dispositive motions as motions for summary judgment.

A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). When a moving party has discharged its burden, the nonmoving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the nonmovant, Key West Harbor v. City of Key West, 987 F.2d 723, 726 (11th Cir. 1993), and resolve all reasonable doubts in that party's favor. Spence v. Zimmerman, 873 F.2d 256, 257 (11th Cir. 1989).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the Court should not grant the summary judgment motion. Augusta Iron and Steel Works v. Employers Insurance of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). It must be emphasized that the mere existence of some alleged factual dispute will not defeat an otherwise properly supported summary judgement motion. Rather, "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

B. Discussion

As relevant to the present motions, Plaintiff alleges that Defendant Gray, is liable under United States v. Bivens, 403 U.S. 388 (1971), for violating his rights as guaranteed by the Fourth, Fifth, and Eighth Amendments. Plaintiff also alleges that Defendants Sessoms and Sud are likewise liable under Bivens for failure to supervise Defendant Gray and protect Plaintiff from violation of his constitutional rights. All Defendants claim they are insulated by qualified immunity.

Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Because the doctrine offers immunity from suit, and not only from liability, it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998).

To benefit from qualified immunity, the government official must demonstrate that he was acting in the scope of his discretionary authority at the time the allegedly wrongful incident occurred. Durruthy v. Pastor, 351 F.3d 1080, 1087 (11th Cir. 2003). As to this question, there is no dispute. Defendants Gray, Sessoms, and Sud were all acting within their discretionary authority. Thus, the burden now shifts to Plaintiff to demonstrate that qualified immunity is not available to Defendants. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). In order to make

this determination, the Court applies the two-part test articulated in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001): 1) As a "threshold question", a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and 2) If so, the court must then determine "whether the right was clearly established" such that a reasonable officer would know that their conduct was unlawful. Therefore, in order to sustain a Bivens action for constitutional violations, Plaintiff must first demonstrate that his constitutional rights were, in fact, violated. <u>Powell v. Lennon</u>, 914 F.2d 1459, 1463 (11th Cir. 1990).

1. *Eight Amendment Claim*

The Court can quickly eliminate Plaintiff's claims for violation of his Eighth Amendment rights against cruel and unusual punishment. The protections of the Eighth Amendment are triggered "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." <u>Ingraham v. Wright</u>, 430 U.S. 651, 671 n. 40 (1977). In this case, Plaintiff had neither been prosecuted nor convicted and, in fact, it is unclear whether he had even undergone the booking process at the time of the altercation with Defendant Gray. Under no interpretation of the facts of this case, could Plaintiff state a claim for violation of his Eighth Amendment rights. Thus, Defendant Sessoms and Sud's Motion to Dismiss (Doc. No. 54) and Defendant Gray's Motion to Dismiss (Doc. No. 57) are **GRANTED** only as to Plaintiff's claims under the Eighth Amendment. The <u>Bivens</u> claims against Defendants Gray, Sessoms, and Sud alleging violation of Plaintiff's Eighth Amendment rights are hereby **DISMISSED WITH PREJUDICE**.

2. *Fourth Amendment Claim*

Plaintiff claims that Defendant Gray's use of force against him was unconstitutionally excessive. "The precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the [Fifth Amendment]) is not settled in this Circuit. Hicks v. Moore, 422 F.3d 1246, 1254 n. 7 (11th Cir. 2005).[2] With no guidance from the Supreme Court, many courts have drawn a line in the sand at the booking stage of an arrest. See e.g., Lund v. Hennepin County, 2005 WL 2898641 (8th Cir. November 4, 2005); Wilson v. Spain, 209 F.3d 713 (8th Cir. 2000); Robins v. Harum, 773 F.2d 1004, 1007 (9th Cir. 1985). In this case, Plaintiff has not made clear in the Complaint whether the booking phase of the arrest was completed at the time of the incident in question, although it is clear that Plaintiff had not been taken to a cell and was still being held in the report writing room. (Pfeiffer Aff. at ¶ 32). At this stage of the litigation, the Court will not guess as to the exact stage of Plaintiff's arrest, but rather, will analyze Plaintiff's complaint under both the Fourth Amendment's objective reasonableness standard and the more stringent standard of the Fifth Amendment. Significantly, in both claims, issues of material fact exist such that Plaintiff can survive summary judgment.

The Fourth Amendment's guarantees of protection from unreasonable searches and seizures extend to the right to be free from the use of excessive force during an arrest. Graham v. Connor, 490 U.S. 386, 394-95 (1989); Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). Although it has been recognized that "the right to make an arrest or investigatory stop necessarily

---

[2] Many of the cases cited by the Court were actually brought under 42 U.S.C. § 1983 in a civil rights suit against a state official. The reasoning in civil rights actions against state officials is equally applicable to Bivens actions against federal officials. Abella v. Rubino, 63 F.3d 1063 (11th Cir. 1995).

carries with it the right to use some degree of physical coercion or threat thereof to effect it," Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)), an officer is only constitutionally permitted to use the amount of force that a reasonable officer would deem necessary in the situation at hand. Lee, 284 F.3d at 1197. In order to make this determination of objective reasonableness, the court must conduct a careful balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Applying Graham, courts in this Circuit have evaluated "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Lee, 284 F.3d at 1197; see also Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986) (portion reversed by Graham, 490 U.S.386 (1989)) (holding that, in determining if force was reasonable, courts must examine: 1) the need for the application of force; 2) the relationship between the need and amount of force used, and 3) the extent of the injury inflicted).

After evaluating the totality of the circumstances as presented by Plaintiff, the balance clearly tilts towards a Fourth Amendment violation. First, the need for Defendant Gray to use any force was minimal to non-existent. Plaintiff was arrested for driving under the influence of alcohol, which is a serious and potentially dangerous crime, however, after his arrest, Plaintiff posed little danger to himself or to the officers. See Lee, 284 F.3d at 1198 ("Since Graham establishes generally that more force is appropriate for a more serious offense and less force is appropriate for a less serious one, this factor strongly weighs in favor of [Plaintiff.]"). He was not arrested for a violent crime and was not armed. Moreover, he was handcuffed the entire time

he was at the Mayport Naval Station. And while he was using offensive language towards the officers, he was not threatening anyone or "actively resisting arrest." Graham, 490 U.S. at 396. There is simply nothing in the record to indicate that force was necessary to restore order or to protect Plaintiff from himself or others.[3]  Second, the amount of force that was used by Defendant Gray appears highly disproportionate to any need. As any use of force in this situation would be questionable, throwing Plaintiff against a wall, shoving him back into the restraining chair, holding him around the throat in a "choke-hold," and duct-taping his mouth closed "was plainly excessive, wholly unnecessary, and, indeed grossly disproportionate under Graham." Lee, 284 F.3d at 1198. Consequently, the facts as alleged by Plaintiff constitute excessive force in violation of the Fourth Amendment.

### 3. *Fifth Amendment Claim*

If Plaintiff's claims are analyzed under the more demanding Fifth Amendment Substantive Due Process standard, he has still demonstrated a violation. Claims involving mistreatment of pretrial detainees - i.e., excessive use of force - by federal officials are governed by the Fifth Amendment Due Process Clause and require a showing of deliberate indifference to a substantial risk of serious harm. Hicks v. Moore, 422 F.3d 1246, 1253-54 (11th Cir. 2005). Under this standard, whether or not an officer's application of force is actionable as excessive force under the Fifth Amendment depends on whether that force was applied in a good faith effort to maintain or restore discipline, or maliciously or sadistically for the very purpose of punishment or to cause harm. Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005); Brown

---

[3] The Court does note that Defendant claims that Plaintiff attempted to bite him, however Plaintiff disputes that and the Court must accept Plaintiff's version of the facts as true.

v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987).

Based on Plaintiff's version of the facts, he has demonstrated that Defendant Gray's conduct infringed on his right to be free from excessive force under the Fifth Amendment. As Plaintiff was handcuffed and was not being threatening, violent, or combative, forcefully throwing him against a wall and back into the restraining chair, choking him, and sealing his mouth shut with duct-tape did not serve any legitimate law enforcement function. The only purpose this Court can discern for such conduct was to punish Plaintiff for his verbal outbursts. And while an officer may not enjoy being called a "penis," such innocuous, albeit offensive, comments do not justify the excessive use of force. The line of work that law enforcement officers enter lends itself to name-calling and the receipt of profanity and insults. The law expects officers to have thicker-skins than average citizens in such situations. See e.g., Agee v. Hickman, 490 F.2d 210, 212 (8th Cir. 1974) (use of force is not permitted simply because suspect is "argumentative, contentious, or vituperative. It is the policeman's lot to take such verbal abuse without retaliation by force. Force can only be used to overcome physical resistance or threatened force").

In addition to being malicious, Defendant Gray's conduct exhibited deliberate indifference to a risk of serious harm to Plaintiff. As Plaintiff was intoxicated and agitated at the time, duct-taping his mouth shut greatly inhibited his ability to breathe and created a substantial risk that he might vomit and/or choke. The Court concludes that Plaintiff's allegations and evidence demonstrate a violation of his Fifth Amendment Due Process rights.

4. *Supervisory Liability*

An additional wrinkle is added to the analysis when considering whether supervisory

officials participated in or contributed to the constitutional deprivation. While government officials can be liable for the unconstitutional acts of their subordinates, supervisory liability "occurs only when 'the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). It is undisputed that Defendants Sessoms and Sud did not personally participate in the violations of Plaintiff's Fourth and Fifth Amendment rights. Pursuant to the second avenue of establishing supervisory liability, a plaintiff can establish a causal connection in one of three ways: (1) when "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so"; (2) when "a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or (3) when "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id.

Taking Plaintiff's rendition of the facts as true and drawing all inferences in his favor, Plaintiff has demonstrated a causal connection because Defendants Sessoms and Sud knew that Defendant Gray's conduct has surpassed constitutional limits and they failed to take immediate action to stop the ongoing violation. Defendants Sessoms and Sud knew that Plaintiff was intoxicated, they actually witnessed him duct-taped, must have known that he was at a substantial risk of choking and/or vomiting, laughed at him, and left the room without doing anything to remedy the situation. If they failed to order the duct-tape removed for as long as Plaintiff contends, up to forty minutes, then Defendants Sessoms and Sud certainly contributed to the

ongoing nature of the violation. Issues of material fact remain which support a finding that Defendants Sessoms and Sud, in their role as supervisory officials, violated Plaintiff's Fourth and Fifth Amendment rights.

### 5. *Qualified Immunity*

As Plaintiff's allegations constitute a deprivation of his constitutional rights, the Court must now determine whether the individual Defendants are nonetheless insulated from suit because of qualified immunity. Their constitutionally impermissible conduct can still be shielded from liability "if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 342 (1986).

#### a. Defendant Gray

Defendant Gray is not insulated by qualified immunity. Plaintiff's right to be free from excessive physical force during the course of an arrest when he was unarmed, restrained by handcuffs, and posing no threat to himself or others, was clearly established at the time of the incident in question. This Circuit has repeatedly found unconstitutional the use of excessive force when the arrestee or detainee was already restrained and any threat the suspect posed to himself or others had been eliminated. See Lee, 284 F.3d at 1191, 1198-99 (finding excessive force when the plaintiff was already handcuffed and officer slammed her head on the car); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000) (finding excessive use of force when plaintiff was lying on the ground and threat was minimized by other officers); Slicker

v. Jackson, 215 F.3d 1225 (11th Cir. 2000) (police officers not entitled to qualified immunity for claim of excessive force while making arrest in view of evidence that officers beat arrestee even though arrestee was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way). So too in this case, Plaintiff was handcuffed, sitting in a restraining chair in the Security Building, and was not attempting to flee, resist arrest, or threatening harm to himself or others. Consequently, Defendant Gray was on fair notice that his use of force was in excess of that permitted by the Constitution.

Moreover, the Court is convinced that no reasonable officer would think such a use of force was necessary or justified in the present case. Plaintiff was at the most annoying. No reasonable officer could have thought offensive language necessitated shoving, choking or duct-taping of an intoxicated arrestee's mouth. See Durruthy v. Pastor, 351 F.3d 1080, 1093 (in civil rights action arising out of excessive force utilized by officer to effect arrest, question, for qualified immunity purposes, is whether officer's conduct was objectively reasonable in light of facts confronting officer). In fact, Defendant Gray's fellow officers considered his conduct wholly improper. Officer Pfeiffer was appalled by Defendant Gray's conduct and concerned about the health risks of duct-taping an intoxicated arrestee's mouth. Officer Pfeiffer testified that he considered Defendant Gray's actions to constitute an "excessive use of force" in violation of the policies of the Navy. (Pfeiffer Aff. at ¶ 27). Even more concerning is the indication that Defendant Gray himself realized the illegal nature of his conduct as he refused to document his use of force per Navy policy (Id. at ¶ 16) and instructed subordinates not to report the incident in their reports. (Id. at ¶ 34). Based on the record before the Court and drawing all inferences in favor of Plaintiff, the Court concludes that Defendant Gray's conduct, in light of the facts

confronting him at the time, was objectively unreasonable as a matter of law. Consequently, he is not entitled to qualified immunity.[4] His Motion to Dismiss the Fourth and Fifth Amendment claims against him (Doc. No. 57) is, therefore, **DENIED**.

b. Defendants Sessoms and Sud

Defendants Sessoms and Sud are likewise not entitled to qualified immunity. It is clearly established in this Circuit that an officer who witnesses another officer's use of excessive force and fails to take reasonable steps to protect the victim, can be liable for his own nonfeasance. Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985); see also Amanda K. Eaton, Note, *Optical Illusions: The Hazy Contours of the Clearly Established Law and the Effects of Hope v. Pelzer on the Qualified Immunity Doctrine*, 38 Ga. L. Rev. 661, 698-99 (2004) (discussing the Hope Court's expectation that officers look to the reasoning underlying a case's holding as to official capabilities and apply the reasoning to similar situation with which they are confronted). This obligation not to acquiesce in constitutional deprivations is even stronger when the officer is supervising the offending officer. The most significant job duty of any supervisory official, including Defendants Sessoms and Sud, is to oversee and supervise the conduct of their subordinates. Thus, a supervising officer has fair notice that to tolerate or tacitly approve of a subordinate's violation of an arrestee's constitutional rights is, in and of itself, unlawful. See United States v. Lanier, 520 U.S. 259 (1997) (defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right); Anderson v. Creighton, 483 U.S. 635, 640 ("in the light of pre-existing law the unlawfulness must be apparent"). The

---

[4] Defendant Gray makes the baseless and unsubstantiated argument that Plaintiff has not complied with Bivens' heightened pleading requirement. (Doc. No. 57 at ¶ 13). This argument has no merit and does not deserve discussion.

Court is not concluding that Defendants Sessoms and Sud were required to personally remove the duct-tape with their own hands. But if, as Plaintiff alleges, they had actual knowledge of an ongoing use of constitutionally excessive force, especially one that seriously endangered Plaintiff's health, and they waited up to forty minutes to stop the violation, then their conduct was unreasonable and violated "clearly established rights of which a reasonable officer would have known." Harlow, 457 U.S. at 818. These questions of material fact preclude a finding that Defendants Sessoms and Sud are entitled to qualified immunity and instead, they must defend themselves in this litigation. Consequently, Defendants Sessoms and Sud's Motion for Summary Judgment (Doc. No. 54) is **DENIED**.

IV. **Conclusion**

1. The United States' Motion to Dismiss all Defendants in their Federal Official Capacities (Doc. No. 41) is **DENIED**. The Government shall have **thirty (30) days** from the date of this Order to submit a scope of employment certification pursuant to § 2679(d)(2) if it so chooses.

2. Defendant Gray's Motion to Dismiss as to individual capacity claims (Doc. No. 57) is **GRANTED IN PART AND DENIED IN PART**.

    A. It is **GRANTED** to the extent that Plaintiff's Bivens claim against Defendant Gray alleging violation of Plaintiff's Eighth Amendment rights is **DISMISSED WITH PREJUDICE.**

    B. The remainder of Defendant Gray's Motion to Dismiss Plaintiff's claims under the Fourth and Fifth Amendments is **DENIED**

3. Defendants Sessoms and Sud's Motion for Summary Judgment as to individual

capacity claims (Doc. No. 54) is **GRANTED IN PART AND DENIED IN PART.**

    A. It is **GRANTED** to the extent that Plaintiff's Bivens claim against Defendants alleging violation of Plaintiff's Eighth Amendment rights is **DISMISSED WITH PREJUDICE.**

    B. The remainder of Defendants Sessoms and Sud's Motion for Summary Judgment as to Plaintiff's claims under the Fourth and Fifth Amendments is **DENIED.**

3.  4. Plaintiff's Motion for Extension of Time to Invoke Court-Annexed Mediation (Doc. No. 52) is **GRANTED**. In light of the present Order, Plaintiff shall have an extension of twenty-one days to file an appropriate motion seeking court-annexed mediation if he so chooses.

**DONE AND ENTERED** at Jacksonville, Florida, this 23rd day of November, 2005.

                                    HARVEY E. SCHLESINGER
                                    United States District Judge

Copies to:

Stephen G. DeNigris, Esq.
Mark Rowan Miller, Esq.
Reginald Luster, Esq.
Ralph J. Lee, AUSA